**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **REED J. NEWLIN,** | : |
| **OCTAVIA KINCHLOE,** | : |
| **DOREEN J. LEW,** | : |
| **BRADFORD J. PARSONS** | : |
| **On behalf of themselves and on behalf of all others similarly situated,** | : |
| **Plaintiffs,** | : **Civil Action No. 05-1939 (CKK)** |
| **v.** | : |
| **SBC PENSION BENEFIT PLAN, and** | : |
| **AT&T INC.,** | : |
| **Defendants.** | : |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION,**
**AND APPOINTMENT OF CLASS COUNSEL**

**INTRODUCTION**

Some cases present difficult or close questions regarding class certification, but this is not one of them. This action challenges the legality of the design and operation of four ERISA-governed "cash balance" and "pension equity" retirement plans sponsored by SBC Communications Inc. ("SBC" or the "Company") which was recently renamed AT&T Inc. following its acquisition of AT&T Corp. in November 2005. Plaintiffs are current and former Company employees who allege that all four Plans -- now consolidated into one plan, *i.e.,* the SBC Pension Benefit Plan (the "SBC Plan" or "Plan") -- unlawfully discriminate against them and other Plan participants on account of their age or increasing service, in violation of ERISA

and the parallel provisions of the Tax Code.  By and through this motion, Plaintiffs seek certification of a proposed Class (as to Count Four of the five-count First Amended Class Action Complaint ("Compl.") (Doc. 4)) and four proposed Subclasses  (as to the four remaining Counts), as well as appointment of undersigned counsel as Class counsel.

The reason this case is ideally suited for treatment under Rule 23 is that Plaintiffs' challenges are based entirely on the undisputed terms of the Plans and their benefit formulas. Plaintiffs present only questions of law, all of which are common – indeed identical – to all members of the Class (as regards Count Four) and all members of the Subclasses (as regards their respective Counts, namely, One through Three, and Five).  Those questions of law relate exclusively to an allegedly unlawful plan design and have nothing to do with the individual characteristics of the Plan participant/proposed Class members affected by the asserted illegalities.  This makes the case perfectly suited for resolution via the class action provisions of Fed. R. Civ. P. 23 -- so much so that the case can and should be certified under not just one but *three* provisions of Rule 23:  Rule 23(b)(1)(A), 23(b)(1)(B) and/or 23(b)(2):

- The prerequisites of Rule 23(a) are all met because the factual underpinnings and legal theories Plaintiffs advances apply to the proposed class, and the relief Plaintiffs seeks is no different than the relief sought for the proposed class.

- The requirements of Rule 23(b)(1)(A) are satisfied because the prosecution of separate actions would create a risk of incompatible standards of conduct for the Plan and SBC/AT&T, its sponsor and administrator.

- The requirements of Rule 23(b)(1)(B) are satisfied because a ruling in this case would as a practical matter be dispositive of the interests of other putative class members not parties to the adjudication, or would substantially impair or impede

their ability to protect their interests.

- Additionally (or alternatively), the requirements of Rule 23(b)(2) are satisfied because Plaintiffs also seek injunctive and declaratory relief (under ERISA § 502(a), 29 U.S.C. § 1132(a)) and that relief predominates over the monetary relief sought that would flow directly from the requested injunctive and declaratory relief.

## STANDARDS GOVERNING THIS MOTION

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99 (1981). Congress designed the modern, 1966 version of Rule 23 to insure that courts effectively address the legal problems of large numbers of individuals who raise common concerns. *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 553 (1974). Because they promote judicial economy and efficiency and afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions, the courts should give Rule 23 a liberal rather than a restrictive construction. *E.g., Adair v. England,* 209 F.R.D. 5, 8 (D.D.C. 2002).

Class certification is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979). For in such cases, "'the class-action device save[s] the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion.'" *Gratz v. Bollinger,* 539 U.S. 244, 268 n.17 (2003) (citation omitted). *Accord General*

*Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982).[1]

To maintain a class action, Plaintiffs must satisfy the four requirements of Rule 23(a) (numerosity, commonality, typicality and adequacy of representation) and demonstrate that the case is "maintainable" under any one of the three prongs of Rule 23(b): Rule 23(b)(1) ((A) or (B)), (b)(2) or (b)(3). *Hartman v. Duffey,* 19 F.3d 1459, 1468 (D.C. Cir.1994); *In re Vitamins Antitrust Litigation,* 209 F.R.D. 251, 256 (D.D.C. 2002). Additionally, although Rule 23 neither discusses nor imposes explicit requirements on the definition of a class, a requested class must be sufficiently definite to enable the Court to evaluate the propriety of certification and identify members of the class. *Lightfoot v. District of Columbia*, Civ. No. 01-1484, slip. op. at 5 (D.D.C., Jan. 14, 2004) (CKK) (attached hereto as Ex. 1); *Pigford v. Glickman,* 182 F.R.D. 341, 347 (D.D.C. 1998).

In determining whether to certify a class, the court should not consider the underlying merits of the Plaintiffs' claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* at 178 (quotation omitted). *Accord In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. 12, 14, 21 (D.D.C. 2001), *appeal denied,* 289 F.3d 98 (D.C. Cir. 2002).

Thus, when deciding a motion to certify a class, the allegations in the complaint are accepted as true. *In re Veneman,* 309 F.3d 789, 793-95 (D.C. Cir. 2002) (rejecting government's argument that plaintiffs have no viable claim, stating that it had "no bearing on the question of

---

[1] *See also Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339 (1980) ("The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device").

class certification"); *Robinson-Smith v. Gov't Employees Ins. Co,* No. 01-1340 (PLF), 2001 U.S. Dist. Lexis 25516, *7 (D.D.C. November 16, 2001) ("Defendant dedicates most of its Opposition to the merits of plaintiff's claim, but it is established that class and collective certification inquiries do not concern the merits of a plaintiff's case").

Here, all the requirements of Rule 23(a) are easily met, and the case may be maintained as a "mandatory" class action under Rule 23(b)(1) and/or (b)(2) which are preferred for their relative ease of administration and superior *res judicata* effects over Rule 23(b)(3) which provides for automatic notice and the right to opt-out.   *See, e.g., Adair,* 209 F.R.D. at 11-12.

## FACTUAL BACKGROUND

The SBC Pension Benefit Plan (the "SBC Plan" or "Plan"), is the Company's main defined benefit plan covering most of its tens of thousands of management employees.  Compl. ¶ 2.  The other three plans at issue in this case (the "Merged Plans") – the Pacific Telesis Group Cash Balance Pension Plan for Salaried Employees (the "PTG Plan"), the Southern New England Telecommunications Corporation Management Pension Plan ("SNET Plan"), and the Ameritech Management Pension Plan ("Ameritech Plan") – were merged (in 1999, 2000 and 2004, respectively) into the SBC Plan, following SBC's acquisitions of PTG, SNET, and Ameritech (in 1997, 1998, and 1999, respectively).  *Id.* ¶ 3.

The five-count First Amended Class Action Complaint (Doc. 4) alleges that all four Plans unlawfully discriminate against Plan participants on account of their age or increasing service. *Id.* ¶ 4; *id.*, Counts One-Five.

Plaintiffs, current or former Company employees and participants, *id.*  ¶¶ 19-22, allege that the Plans do this, in violation of ERISA, in the following ways:

5

- **The Opening Balance Violations**.  On the date each of the SBC, Ameritech, and PTG Plans were converted from traditional pension plans to "cash balance" or "pension equity" plans, many younger participants enjoyed significant one-time benefit accruals under the plans as part of the conversion.  In contrast, employees who were similarly situated, though older, generally enjoyed much smaller increases, or in some cases no increase, in their accrued benefit under the plans – solely because they were older.  Plaintiffs refer to this as the "Opening Balance Violation."  That alleged violation is the subject of Counts One through Three and is raised on behalf of three similar, but distinct Subclasses of participants by Plaintiffs Newlin (SBC), Kinchloe (Ameritech) and Lew (PTG).[2]

- **The Declining Rate of Accrual Violation.**  Under each of the SBC, Ameritech, PTG, and SNET Plans, the rate at which benefits accrued under the Plans after the Plans were converted to cash balance or pension equity plans was systematically larger for younger employees than for similarly-situated, but older, employees – again, solely because the latter group of employees was older.  Plaintiffs refer to this as the "Declining Rate of Accrual Violation."  This alleged violation is the subject of Count Four and is brought on behalf of the entire Class by all four named Plaintiffs.

- **Forfeiture Violation.**  Under the SBC and Ameritech Plans, participants forfeit the ability to take a portion of their benefit in the form of a single lump sum solely because they continue to work beyond a specified number of years.  Plaintiffs refer to this as the "Forfeiture Violation."  It is the subject of Count Five and brought on behalf of a Subclass by Plaintiffs Kinchloe, Lew and Parsons.

---

[2] The SNET Plan did not, it seems, violate ERISA in the manner in which it calculated the opening account balance. Therefore, Plaintiff Parsons or other participants whose benefits were converted to a cash balance formula while at SNET are not among the members of the three Opening Balance Subclasses.

To recap, and display visually the violations alleged against each of the Plans, Plaintiffs provide the Court with the following chart:

| Plan | Opening Balance Violation | Declining Rate of Accrual Violation | Forfeiture Violation |
|------|---------------------------|-------------------------------------|----------------------|
| SBC | ☑ | ☑ | ☑ |
| Ameritech | ☑ | ☑ | ☑ |
| PTG | ☑ | ☑ | |
| SNET | | ☑ | |

The proposed Class is defined as follows:

All persons who participated in the SBC Pension Benefit Plan (also known at times as the SBC Pension Benefit Plan – Nonbargained Program) at any time after May 31, 1997, the SNET Management Pension Plan at any time after December 31, 1995, the Pacific Telesis Group Cash Balance Pension Plan for Salaried Employees at any time after June 30, 1996, and/or the Ameritech Management Pension Plan at any time after April 30, 1995; and the beneficiaries and estates of such persons, but excluding persons who did not participate in the SBC Pension Benefit Plan until after January 14, 2005.

Compl. ¶ 124.

The following Subclasses also are proposed:

- SBC Transition Benefit Account ("TBA") Subclass:

  All persons who participated in the SBC Pension Benefit Plan – Nonbargained Program on June 1, 1997, and the beneficiaries and estates of such persons. (*See* Count One).

- Ameritech Opening DLS Benefit Subclass:

  All persons who participated in the Ameritech Management Pension Plan on May 1, 1995, and the beneficiaries and estates of such persons. (*See* Count Two).

- PTG Opening Cash Balance Account Subclass:

  All persons who participated in the Pacific Telesis Group Cash Balance Pension Plan for Salaried Employees on July 1, 1996, and the beneficiaries and estates of such persons. (*See* Count Three).

- Lump Sum Forfeiture Subclass:

> All persons who participated in the SBC Pension Benefit Plan –
> Nonbargained Program and/or the Ameritech Management Pension Plan at
> any time after June 13, 2001, and the beneficiaries and estates of such
> persons. (*See* Count Five).

*Id.*

As relief for the alleged violations outlined above and described in detail in the

Complaint, Plaintiffs ask the Court, *inter alia*, to declare that the Plans violated and violate

ERISA and parallel Internal Revenue Code standards and order Defendants to bring the terms

and administration of the Plans into compliance with ERISA and the Internal Revenue Code.

*See id*. ¶ 5; Prayer for Relief.

## ARGUMENT

I.    **THE PROPOSED CLASS AND SUBCLASSES SHOULD BE CERTIFIED WITH
      RESPECT TO ALL CLAIMS FOR PURPOSES OF LIABILITY AND RELIEF
      UNDER RULE 23(b)(1) AND/OR (b)(2), AND UNDERSIGNED COUNSEL
      APPOINTED CLASS COUNSEL.**

A.    **Plaintiffs Satisfy All of the Requirements of Rule 23(a)**

Under Rule 23(a), one or more members of a class may sue or be sued as representative

parties on behalf of all only if: (1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class.

1.    **The Members of the Class Are Sufficiently Numerous that Joinder
      is Impracticable.**

A plaintiff must demonstrate that the class is so numerous that joinder of all members is

impracticable.  Fed. R. Civ. P. 23(a)(1) ("[o]ne or more members of a class may sue or be sued

as representative parties on behalf of all only if (1) the class is so numerous that joinder of all

members is impracticable"). Although Rule 23 requires no minimum number of class members, numerosity is generally deemed satisfied by a proposed class of at least 40 members. *Coleman v. Pension Benefits Guar. Corp.*, 196 F.R.D. 193, 198 (D.D.C. 2000); *see also E.E.O.C. v. Printing Ind., Inc.,* 92 F.R.D. 51, 53 (D.D.C. 1981) ("as few as 25-30 class members should raise a presumption that joinder would be impracticable"). The exact number of class members need not be known before the proposed class will be found sufficiently numerous to make joinder impracticable. *See, e.g., Kifafi v. Hilton Hotels Retirement Plan ("Kifafi I"),* 189 F.R.D. 174, 176 (D.D.C. 1999); *Pigford,* 182 F.R.D. at 347. Given the number of participants typically covered under a benefits plan and their geographic dispersion, numerosity rarely stands as an obstacle to class certification in an ERISA suit.

Here, numerosity will be readily established because the proposed Class and each of the Subclasses has tens of thousands of members dispersed across the country, making it clear that they are each sufficiently numerous that joinder of all Class and Subclass members is impracticable.

## 2.    The Claims Present Common Questions of Law and Fact.

The commonality provision of Rule 23(a)(2) is also easily met here. The commonality test is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class (or subclass) members. Plaintiffs are not required to show that there is commonality on every factual and legal issue. *E.g., Pigford,* 182 F.R.D. at 348. Moreover, the existence of factual distinctions between the claims of putative class members will not preclude a finding of commonality. *E.g., Bynum v. District of Columbia,* 217 F.R.D. 43, 46-47 (D.D.C. 2003). Rather, at least *one* question of law *or* fact needs to be common among the class and subclass members. *In re Lorazepam,* 202 F.R.D. 12, 26 (D.D.C. 2001).

As this Court observed in *Kifafi I*, which challenges, among other things, whether the Hilton Hotels pension plan's benefit accrual formula violates ERISA's anti-backloading rules, "[t]he commonality test is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."  *Kifafi I*, 189 F.R.D. at 176-77 (quotation marks and citation omitted). The Court found that whether that employer's benefit-accrual formula complied with ERISA in that respect "provides a question of law common to all class members." Then, in *"Kifafi II,"* last year, the Court also certified four out of five aspects of Kifafi's "service counting claim," which it had declined to certify in *Kifafi I*, because the Court found that (1) whether plan failed to count years of union service for vesting purposes, (2) whether incorrect hour standard was applied for counting a year of service, (3) whether the plan improperly failed to credit leaves of absence; and (4) whether the plan failed to count the year in which employees first became participants in the plan for vesting purposes were all common questions under Rule 23(a)(2).  *Kifafi v. Hilton Hotel Retirement Plan ("Kifafi II")*, 228 F.R.D. 382, 385-86 (D.D.C. 2005).

This Court also found commonality satisfied in *Lightfoot, supra*, a government benefits case challenging the administration of the District of Columbia's Disability Compensation Act. The Court found that the City's allegedly unconstitutional termination, suspension and reduction of benefits procedures challenged in *Lightfoot* present questions of law and fact common to all class members, *i.e.*, individuals who have been or will be terminated or suspended from the program.  *Lightfoot, supra*, at 7-8 ("commonality test is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members") (citation omitted).

So too in *Coleman,* an ERISA case challenging the legality of a pension plan amendment equally affecting the named plaintiffs and members of the class, Judge Harris found the commonality requirement satisfied by the presence of that common question – *i.e.*, whether the plan amendment in that case complied with ERISA.  *Coleman,* 196 F.R.D. at 198.[3]

This case is especially easy because it raises *nothing* but common questions of law and fact, both as to liability and relief, thereby satisfying the requirements of Fed. R. Civ. P. 23(a)(2). These common issues include the question at the heart of Counts One through Four:  *i.e.,* whether the rate at which participants' benefits accrued under the Plans were reduced every month they participate on account of age, in violation of ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), and Code § 411(b)(1)(H)(i), which provide that "the rate of the employee's benefit accrual [cannot be] reduced, because of the attainment of any age."  Also common to all members of the Lump Sum Forfeiture Class is the question of whether participants' accrued benefits under the Plans were reduced solely on account of increasing service, in violation of ERISA § 204(b)(1)(G), 29 U.S.C. § 1054(b)(1)(G), and Code § 411(b)(1)(G), which provide that a "participant's accrued benefit [cannot be] reduced on account of any increase in his age or service."

These common questions amply satisfy the requirements of Rule 23(a)(2).  The courts that have decided cash balance or pension equity cases to date and other cases presenting the same or closely analogous claims have readily found that such questions satisfy the commonality inquiry.  *E.g., Cooper v. IBM Personal Pension Plan,* Civ. No. 99-829-GPM, slip op. at 6 (S.D.

---

[3] And in *Stewart v. National Shopmen Pension Fund,* 563 F. Supp. 773 (D.D.C. 1983), *rev'd on other grounds,* 730 F.2d 1552 (D.C. Cir. 1984), an ERISA action challenging the reduction or elimination of participants' past service credits, the court found Plaintiffs and class members "joined by the common fact that they were all deprived of past service credits by defendants upon their withdrawal of their employer from the defendant Fund."  563 F. Supp. at 778. (On appeal, the Circuit Court reversed the grant of summary judgment for the participants but did not disturb the class certification ruling.  The case later settled as a class action.  *See Stewart v. National Shopmen Pension Fund,* 795 F.2d 1079 (D.C. Cir. 1986).)

Ill Sept. 17, 2001) (attached as Ex. 2) (whether cash balance and pension equity plans were age discriminatory presented common issue of law or fact); *Eaton v. Onan Corp.* 117 F. Supp.2d 812, 822 (S.D. Ind. 2000) (referencing prior order certifying class regarding ERISA claims that plan conversion and/or plan's benefit formula discriminated on the basis of age, was backloaded, and/or resulted in improper forfeitures); *Amara v. Cigna,* 2002 U.S. Dist. LEXIS 25947, **8-9 (D. Conn. Dec. 20, 2002) (whether plan is age discriminatory under ERISA presents a common question of law and fact as to each class member).

Moreover, not only are all issues concerning liability common to all Class members and Subclass members (as to their respective subclass(es)), but the declaratory and injunctive relief sought is also common to all Class member and Subclass members as to their respective subclass(es), presenting nothing but common issues of fact or law. *E.g., Berger v. Xerox Corporation Retirement Income Guarantee Plan,* 338 F.2d 755, 763-64 (7th Cir. 2003) (cash balance pension plan case regarding legality of plan's methodology for calculating lump sum distributions; finding that Plaintiffs' requested "declaration that Xerox's method of computing the lump sums to which withdrawing employees are entitled is unlawful . . . . is a ground common to all the members of the class").

### 3. Plaintiffs' Claims Are Typical of the Claims of the Class and the Subclasses.

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3) (requiring that "the claims . . . of the representative parties [be] typical of the claims . . . of the class").

Typicality does not mean "unanimity":  as with commonality, it is not necessary that the claims of the representative Plaintiffs be identical to the claims of the class to satisfy typicality.

*Wagner,* 836 F.2d at 591.[4]  As noted in *Pigford,* the typicality prerequisite is, more simply,

"'intended to assess whether the action can be efficiently maintained as a class and whether the

named plaintiffs have incentives that align with those of the absent class members so as to assure

that the absentees' interests will be fairly represented.'"  *Pigford,* 182 F.R.D. at 349 (citation

omitted).  The requirement "is satisfied if each class member's claim arises from the same course

of events that led to the claims of the representative parties and each class member makes similar

legal arguments to prove the defendant's liability." *Id.*

The question of typicality is closely related to the question of commonality.   As has

often been noted, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."

*Falcon,* 457 U.S. at 158 n.13.  *Accord Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626

n.20 (1997); *Wagner v. Taylor,* 836 F.2d 578, 590 n.77 (D.C. Cir. 1987) (same).

This case cannot be meaningfully distinguished from *Kifari I,* where this Court found

typicality met "[b]ecause the legality of the benefit-accrual formula depends upon a policy or

practice that is applied to all putative class members, including [the named Plaintiffs]."  *Kifafi I,*

189 F.R.D. at 177.  Moreover, the named Plaintiff's injury was "identical to any injury suffered

by the absentee class members, [and] therefore their interests will be properly aligned."  *Id.; see*

*also id.* ("each class member's claim arises from the same course of events that led to the claims

of the representative parties and each class member makes similar legal arguments to prove the

defendant's liability").  Similarly, in *Coleman* the court found that the incentives of the named

plaintiffs were typical of those of the proposed class because they "suffered the same alleged

---

[4] Differing degrees of injury among class members does not necessarily defeat typicality if the basic injury each class member asserts is the same. *Bittinger v. Tecumseh Products Co.,* 123 F.3d 877, 885 (6th Cir.1997).  Likewise, typicality may be found even if different defenses may apply to some class members. *Id.* at 884.

injury" from "the same alleged source" – *i.e.,* the alleged illegal plan amendment.  *Coleman,* 196 F.R.D. at 198.[5]

Here, as in *Kifafi I (and II,* discussed again below)*, Coleman,* and *Stewart,* all proposed Class and Subclass members including Plaintiffs suffered the same alleged injury from the same alleged cause(s) under each theory of recovery and seek the identical kinds of relief.  It is the Plans' alleged illegal benefit formulas that give rise to Plaintiffs' claims and the claims of the Class and Subclasses.  *See also Molina v. The Mallah Organization, Inc.*, 144 F.R.D. 37, 41 (S.D.N.Y. 1992) (typicality requirement met by allegation of unlawful scheme to prevent plaintiffs from attaining benefits from welfare and pension funds).  Plaintiffs' claims could not be more typical than those of the proposed Class and their respective Subclasses.  They do not assert any claims relating to the Plans in addition to or different than those of the proposed Class or their respective Subclasses.

At bottom, as the Court found in *Cooper v. IBM Personal Pension Plan, supra,* slip op. at 7, typicality is met here as in that case because "[a]ll members of the class have a common interest in maximizing their benefits under the Plan by compelling Defendants to comply with the law."  Or, as this Court said in *Lightfoot,* rejecting defense contentions of atypicality: "Plaintiffs aim to remedy alleged violations in the disability program's procedures that affect all who have had their benefits altered or will have their benefits altered in the future.  This fact effectively places the named Plaintiffs' incentives in line with all the members of the class. *Lightfoot, supra,* slip op. at 10.

---

[5] *Accord Stewart,* 563 F. Supp. at 778 (finding typicality where the named plaintiffs' claims "arise from the same practice as to which the entire class was subjected," *i.e.,* to the same policy of cancellation of past service credits upon withdrawal of their employer from the multiemployer fund).

4.     **Plaintiffs Will Fairly and Adequately Protect the Interests of the Class and the Subclasses.**

To determine whether named Plaintiffs are adequate class representatives under Rule 23(a)(4), the Court is to consider whether any conflicts of interest exist between plaintiffs and the absent Class members, and whether the plaintiffs' attorneys are qualified, experienced and generally able to conduct the litigation. *Kifafi,* 189 F.R.D. at 177 (*citing Twelve John Does v. District of Columbia,* 117 F.3d 571, 575 (D.C. Cir. 1997)); *see also Pigford,* 182 F.R.D. at 350. It is the *Defendants* who have the burden to establish that representation by a named plaintiff does not meet the requirements of Rule 23(a)(4). *Rozet,* 141 F.R.D. at 217.

Here, any challenge to Plaintiffs' adequacy or the competency of Plaintiffs' counsel would be unavailing, whoever has the burden of proof. As to all Counts, Plaintiffs have the same legal and financial interest as members of the proposed Class and as the members of their respective Subclasses as to the subclass claims asserted. There is no reason to believe that they will not zealously represent the interests of the Class and their respective Subclasses in their efforts to bring the Plan into compliance with law. Given this unitary interest, no questions arise of peculiarities of the Plaintiffs, unique defenses to their claims, or antagonistic interests between Plaintiffs and other class members.

Moreover, undersigned counsel will fairly and adequately represent the interests of the Class and the Subclasses. Plaintiffs have engaged counsel with considerable ERISA class action litigation experience, discussed below in the context of Rule 23(g).

B.     **The Proposed Class Is Properly Certified Under Rule 23(b)(1).**

A proposed class that meets the four requirements of Rule 23(a) should be approved if it complies with any one of the three provisions of Rule 23(b). *Amchem,* 521 U.S. at 614. Rule 23(b)(1) defines two related types of class actions, both designed to prevent prejudice to the parties

arising from multiple potential suits involving the same subject matter. Rule 23(b)(1)(A) is designed to prevent prejudice to the party opposing the class, and Rule 23(b)(1)(B) is designed to prevent prejudice to potential members of the class. Both subsections are applicable here.

### 1.     The Case Satisfies the Requirements of Rule 23(b)(1)(A).

Rule 23(b)(1)(A) covers cases in which the prosecution of separate actions by or against members of the class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the class. Fed. R. Civ. P. 23(b)(1)(A). According to the Supreme Court, Rule 23(b)(1)(A) "'takes in cases *where the party is obliged by law to treat the members of the class alike* (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against down river owners).'" *Amchem*, 521 U.S. at 614 (emphasis added) (citation omitted).

It is precisely for this reason, as one class action *defense* lawyer has pointed out, that "[p]erhaps unique to ERISA class actions" the requirements of Rule 23(b)(A)(1) are more often met in ERISA than in any other kind of case – because "[u]nder ERISA, the plan and its fiduciaries generally owe the same duty to all participants, and a violation of ERISA with respect to one may establish a violation with respect to all other similarly situated participants." Gary L. Sasso, *Defense of Federal Class Actions,* 710 PLI/Lit 149, * 250 (July 2004) (Ex. 3).

Indeed, it is well-settled that a plan and its fiduciaries must treat similarly situated participants in the same manner. As the Labor Department recently noted in promulgating the most recent regulations governing plan claims procedures, ERISA requires plan provisions to be applied consistently to similarly situated claimants and "[c]ourts have long recognized that such consistency is required *even under the most deferential judicial standard of review*." 65 Fed.

Reg. 70246, 70251 & n.26 (November 21, 2000) (emphasis added) (citations to several appellate decisions omitted).

Thus, ERISA cases – and especially ERISA pension cases such as this one challenging the legality and/or accuracy of benefit calculation -- are frequently certified under Rule 23(b)(1)(A). *E.g., Wagener v. SBC Pension Benefit Plan-Nonbargained Program*, No. 03-769 (RCL) (D.D.C. September 21, 2005), slip op. at 3 (attached hereto as Ex. 4) (certifying under Rule 23(b)(1)(A), among other provisions, a case involving alleged improper exclusion of two weeks of pay from the calculation of participants' benefits, contrary to the practice for other similarly situated participants); *In re Amsted Indus., Inc. "ERISA" Litig.*, No. 01-C-2963, 2002 U.S. Dist. LEXIS 24144, at * 8 (N.D. Ill. Dec. 16, 2002) (granting certification under (b)(1)(A) because of risk of inconsistent judgments in case challenging plan amendments eliminating lump sum distribution option and changing retirement requirements); *Cooper v. IBM Personal Pension Plan, supra,* slip op. at 10 (also certifying class under Rule 23(b)(1)(A), saying "[t]he question presented in this case is whether Defendants' pension plan violates ERISA.  If each pension participant filed a separate lawsuit to challenge the Plan, inconsistent and varying adjudications of the legality of the Plan are inevitable").  *See also Larionoff v. U.S.*, 533 F.2d 1167, 1181 n.36 (D.C. Cir. 1976), *aff'd*, 431 U.S. 864 (1977) (in action by naval enlisted men seeking to recover additional reenlistment bonuses to which they contended they were entitled, noting that if there were a question as to whether case should have been certified, as it was, under Rule 23(b)(1)(B), the case "would appear to qualify for class action status under Rule 23(b)(1)(A)").

As the court said in *Schutte v. Maleski*, 1993 U.S. Dist. LEXIS 8332 at *26-27 (E.D. Pa. June 18, 1993), where plaintiffs challenged the legality under ERISA of one pension plan amendment and asserted the continued vitality of two others, "differing outcomes [of such a

claim] would make it impossible for defendants to implement any one result because of the inherent conflict from disparate adjudications.  This scenario epitomizes Rule 23(b)(1)(A)'s phrase 'incompatible standards of conduct.'"  *Id.* at \*26.

That accurately characterizes the situation here as well.  Individual lawsuits premised on one or more of the above listed claims pose the risk of inconsistent judgments.  One court could find for Plaintiffs on the Opening Account Balance theories of Counts One through Three, a second court on the Declining Rate of Benefit Accrual theory in Count Four, yet another only on the Lump Sum Forfeiture theory of Count Five.  Obviously, Defendants could not comply with such conflicting edicts.  *See, e.g., Franklin v. Barry,* 909 F. Supp. 21, 31 (D.D.C. 1995) ("a haunting specter of inconsistency, resulting in incompatible standards of conduct . . . is raised by the threat of individual suits rather than a class action.  This is sufficient to satisfy Rule 23(b)(1)(A)").[6]

Note that certification under Rule 23(b)(1)(A) here is not only appropriate because conflicting rulings on Plaintiffs' *claims* may create incompatible standards for the Plans and Plan fiduciaries, but also because conflicting rulings on the Defendants' *defenses* would have the same result.  Thus, in *Becher v. Long Island Lighting Co.*, 164 F.R.D. 144 (E.D.N.Y. 1996), a case challenging a pension plan's determination that employees had forfeited credit for years of

---

[6] *Accord Kohl v. Association of Trial Lawyers of America,* 183 F.R.D. 475, 485-86 (D. Md. 1998) (case challenging an alleged denial of a COLA certified under (b)(1)(A) because "adjudication of this case as a class action will result in one interpretation of the Plan's prescribed benefits, and provide a uniform formula in which the COLA will be calculated for lump sum payments"); *Clauser v. Newell Rubbermaid, Inc.,* 2000 WL 1053395 at \*6 (E.D. Pa., July 31, 2000) (class certified under Rule 23(b)(1)(A) because plaintiffs sought declaratory and injunctive relief, including the enforcement of ERISA plan termination provisions, and if relief was granted in some actions but not others, "conflicting declaratory and injunctive relief could make compliance impossible for defendants"); *In re IKON,* 191 F.R.D. 457, 466 (E.D. Pa. 2000) (certifying ERISA case involving fiduciary breach claims under Rule 23(b)(1)(A) because contradictory rulings as a result of multiple suits would make implementing the decisions difficult for the plan's fiduciaries); *Westman v. Textron, Inc.,* 151 F.R.D. 229, 231 (D. Conn. 1993) (case certified under (b)(1)(A) because "whether defendant breached its fiduciary duty is a question common to all potential cases and could, if tried in separate actions, result in wholly inconsistent adjudications").

service prior to their withdrawal of contributions, the court found that Rule 23(b)(1)(A)

certification was appropriate not only because multiple cases "could conceivably result in

different courts reaching conflicting decisions regarding not only the Plan's interpretation but

also *the applicability of the various defenses the defendants seek to interpose*." *Id.* at 153

(emphasis added).

       Here, by contrast, adjudication of the dispute as a class action would provide a uniform

direction for the Defendants in all regards, both prospective and retrospective. Thus, this case

easily satisfies the standard of Rule 23(b)(1)(A) and can and should be certified pursuant to that

subsection of Rule 23.

### 2.      The Case Also Satisfies the Requirements of Rule 23(b)(1)(B).

       Certification is also appropriate here under Rule 23(b)(1)(B) because multiple lawsuits

would create the risk that the judgment with respect to some members of the proposed Class and

Subclasses would, "as a practical matter, be dispositive of the interests of . . . other members . . . or

otherwise impair or impede their ability to protect their interests." *Id.,* Rule 23(b)(1)(B).

       "For a suit to qualify as a class action under this subdivision, it is not necessary for the

nonclass judgment to be technically dispositive of the interests of the other members of the putative

class, but it must as a practical matter conclude the interests of those members." *Larionoff*, 533

F.2d at 1181 n.36 (D.C. Cir. 1976) (*citing* Wright & Miller, Federal Practice & Procedure, citation

omitted). Quoting the Advisory Committee Notes, the Supreme Court has noted that one such case

properly certified under Rule 23(b)(1)(B) is a case that "involve[s] the adjudication of the rights of

all participants in a fund in which the participants had common rights" where "the adjudication

would determine the operating rules governing the fund for all participants." *Ortiz v. Fibreboard

Corp*., 527 U.S. 815, 834 n.14 (1999). In such a case, the *stare decisis* effect of the judgment with

respect to the claim of one individual is likely to have a compelling impact on future litigation by persons similarly situated because no real individual issues exist to distinguish the earlier precedent.

That is certainly the case here: practically, if this case is not certified as a class action it will dispose of the Class and Subclass members' interests without them ever having representation in the case. Thus, for example, if the Court rules in Plaintiffs' favor on liability but provides injunctive or other appropriate equitable relief not to the degree requested, those rulings will as a practical matter determine the claims as to all other participants, whether or not the case proceeds as a class action and even though those other members were not represented. Similarly, if the Plaintiffs were to fail to establish liability under one or more theories that determination would also "as a practical matter be dispositive of the interests" of the absent Class and/or "substantially impair their ability to protect their interests," Fed. R. Civ. P. 23(b)(1)(B). For example, absent Class members who learned that the named Plaintiffs here had not succeeded in striking down the CAM cut-off of the right to take a lump sum distribution would not only be understandably deterred from filing a new suit to establish otherwise but if they did they would have little to distinguish their suit factually or legally from the instant filing.

Certification under Rule 23(b)(1)(B) is designed to avoid just these scenarios and is therefore a proper vehicle for certification of this case. *See also In re Amsted Indus., Inc. "ERISA" Litig.*, , *supra* at * 8 (granting certification under (b)(1)(B) "[b]ecause the rights of current employees will necessarily be adjudicated in this action, we find that the class action is the proper device to assure that all parties are fairly represented"); *Cooper v. IBM, supra.*

**C.    <u>The Proposed Class Is Properly Certified Under Rule 23(b)(2).</u>**

The proposed Class also qualifies for certification under Rule 23(b)(2). "Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has

acted or refused to act on grounds generally applicable to the class.'" *Amchem*, 521 U.S. at 614

(*quoting* Rule 23(b)(2)).  The Advisory Committee Notes to Rule 23(b)(2) explain that "[t]he

(b)(2) class action is intended for cases where broad, class-wide injunctive or declaratory relief is

necessary to redress a group-wide injury."

      This case easily satisfies the language of the rule.  Here there is no question but that

Defendants have "acted . . . on grounds generally applicable to the class, thereby making

appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a

whole."  Fed. R. Civ. P. 23(b)(2).  On behalf of the proposed Class and Subclasses, Plaintiffs

allege that Defendants, "on grounds generally applicable to the class," wrongfully calculate and

pay benefits and discriminate on the basis of increasing age and service.  Thus, this case, again,

is indistinguishable in all important regards from *Kifafi* and *Lightfoot*.  In *Kifafi I*, the Court

found that "[t]he method used to calculate the [challenged] rate of benefit-accrual is a practice

applicable across the board to all class members, 'thereby making appropriate final injunctive

relief or corresponding declaratory relief with the respect to the class as a whole.'"  *Kifafi I,* 189

F.R.D. at 177.  In *Kifafi II,* the Court reached the same conclusion with respect to the "service

counting claim."  *Kifafi II,* 228 F.R.D. at 385.[7]

      Of course, an even closer match can be found in other cash balance or pension equity

plan cases certified under Rule 23(b)(2).  *See Cooper, supra,* slip op. at 10 ("Plaintiffs' second

amended complaint seeks a declaration that the IBM Personal Pension Plan violates federal law.

Plaintiffs seek injunctive relief requiring Defendants to amend the Plan to make it legal.

---

[7] So too in *Coleman*, Judge Harris found that "[b]ecause the [challenged] plan amendment suspending [layoff pension benefits] affected all putative class members, class-wide injunctive and declaratory relief [declaring the amendment invalid] is appropriate."  *Coleman,* 196 F.R.D. at 199. And in *Stewart,* the Court found certification under (b)(2) appropriate where Plaintiffs sought, among other things, a declaration that the Fund Trustees' attempt to cancel the precontributory credits of employees of withdrawing employers was invalid.  *Stewart*, 563 F. Supp. at 778-79.

Defendants' action with respect to the Plan are generally applicable to the class, and, if Plaintiffs succeed in their attempt to show that Defendants' conduct with respect to the Plan is illegal, injunctive and/or declaratory relief will be appropriate"); *Eaton v. Onan, supra* (case alleging age discrimination, backloading and forfeiture challenges to plan conversion and formula certified under (b)(2)); *Amara v. Cigna,* 2002 U.S. Dist. LEXIS 25947, *11 (case alleging, among other things, age discrimination under ERISA certified under (b)(2) because injunctive relief sought for the entire class).

Defendants' only possible objection to certification under Rule 23(b)(2) is that the declaratory and injunctive relief is not primary and that the suit is one "predominantly" for "money damages."  1966 Advisory Committee Notes to Rule 23(b)(2).  Any such objection here would be unavailing.  The reason is that if monetary relief is granted, it would flow directly from the declaratory and injunction relief sought and would not and should be not be considered, as a result, to predominate here.   That is precisely what this Court held in *Lightfoot, supra,* slip op. at 13, and in *Kifafi I* and *Kifafi II* – cases whose reasoning is fully applicable here.

Judge Posner, writing for the Seventh Circuit in *Berger*, involving the legality of a pension plan's stated method for calculation benefits, also rejected the defense claim that monetary relief -- *of over $200 million* -- made the relief sought predominantly monetary:

> Xerox contends that this suit does not seek injunctive or declaratory relief, but really just damages equal to the difference between the lump sums to which ERISA entitled the members of the class and the smaller lump sums that they actually received. . . . . [But [t]he relief sought is . . . declaratory.  What is sought is a declaration that Xerox's method of computing the lump sums to which withdrawing employees are entitled is unlawful.  That is a ground common to all the members of the class.[8]   True, the declaration sought and obtained was merely a prelude to a request for [monetary relief] . . . . But a declaratory judgment is *normally* a prelude to a request for other relief, whether injunctive or monetary; so there is nothing suspicious about the characterization of the suit as one for declaratory relief.  The hope that motivates casting a request for relief in declaratory terms is that if the

---

[8]  Or in the language of Rule 23(b)(2), it is in that sense that "the party opposing the class has acted or refused to act on grounds generally applicable to the class."

> declaration is granted, the parties will be able to negotiate the concrete relief necessary to make the Plaintiffs whole without further judicial proceedings. No one wants an empty declaration. As long as the concrete follow-on relief that is envisaged will if ordered (that is, if negotiations for relief consistent with the declaration break down) be the direct, anticipated consequence of the declaration, rather than something unrelated to it, the suit can be maintained under Rule 23(b)(2).

*Id.* at 763-64.

Judge Posner further explained that it was unnecessary to resort to Rule 23(b)(3): "The reason for allowing opting out in other types of class action[s] is that even though one class member's claim may overlap another's (common issues), it may be different in respects that make him want to bring his own suit. There is nothing like that here. The declaration established the right of each of the class members, and the computation of the damages due each followed mechanically." *Id.* (*citing,* among other cases, *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998)).

In *Allison,* the Fifth Circuit explained that incidental damages are "those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established" and are "capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." 151 F.3d at 415. That of course perfectly describes the monetary relief sought here: the requested monetary relief here is "incidental" to the requested injunctive and declaratory relief because the different amounts participants will be due will be determined pursuant to simple, mechanical calculations.

That was true in *Berger,* just as it was true in *Lightfoot, Kifafi I* and *II,* where this Court (both pre- and post-*Berger*) adopted a very similar analysis. *See also Coleman,* 196 F.R.D. at 199 (request for monetary relief "does not 'predominate' because it flows from their request for a declaratory judgment that the plan amendment suspending [the layoff benefits] was invalid");

*Pigford,* 182 F.R.D. at 351 ("[w]hile Plaintiffs also seek monetary relief for the alleged acts of discrimination, the requested injunction and declaratory relief, if granted, would have a significant impact on [the defendant agency's current and future actions]"; "[t]he mere fact that Plaintiffss are seeking monetary relief in addition to injunctive and declaratory relief . . . does not preclude class certification pursuant to Rule 23(b)(2)," *citing Eubanks v. Billington*, 110 F.3d 87, 92 (D.C. Cir. 1987)).[9]

Also following essentially this same analysis this Court adopted in *Lightfoot* and *Kifafi*, numerous other courts have approved the certification of classes under Rule 23(b)(2) in suits by pension plan participants seeking declaratory and injunctive relief and a corresponding increase

---

[9] *Accord Thomas v. Albright,* 139 F.3d 227, 236 (D.C. Cir. 1998) (finding district court abused its discretion in permitting opt-outs of Rule 23(b)(2) class where there was no basis for the district court to doubt the cohesiveness underlying of (b)(2) class certified based on the existence of individual claims for monetary damages; district court's findings that plaintiffs sought "extensive injunctive and systemic relief in addition to monetary damages" and found that the plaintiffs' claims arose from actions "uniformly imposed on all class members"); *cf Hartman v. Powell*, 2001 U.S. App. LEXIS 7560 (D.C. Cir. March 15, 2001) (*per curiam*) (rejecting argument that $508 million settlement of Title VII class action against the United States Information Agency was improperly certified under Rule 23(b)(2) instead of Rule 23(b)(3), citing *Allison*).

in their pension benefits, *i.e.,* "monetary relief."[10]

## C.    THE COURT SHOULD APPOINT UNDERSIGNED COUNSEL AS CLASS COUNSEL UNDER RULE 23(g).

Under Rule 23(c)(1)(B) and Rule 23(g), a court certifying a class must appoint class counsel based on a consideration of a variety of common sense factors.  Fed. R. Civ. P. 23(c)(1)(B), 23(g).

The Court should find that counsel is qualified to represent the proposed Class and Subclasses.  Counsel has twice been certified as co-lead class counsel in ERISA cases filed in this Court.  *See Wagener v. SBC Pension Benefit Plan-Nonbargained Program*, Civ. No. 03-769 (RCL) (D.D.C. September 21, 2005) (denial of pension benefits case); *United Food and Commercial Workers Pension Plan, Bell v. Executive Committee*, Civ. No. 01-236 (ESH) (D.D.C.) (fiduciary breach with respect to investment of defined benefit plan assets, settled in April 2003 for $10 million).  In addition, he has also been functioning as lead putative class

---

[10] *See, e.g.*, *LaFlamme v. Carpenters Local #370 Pension Plan*, 212 F.R.D. 448, 456 (N.D.N.Y. 2003) (suit alleging freezing of pension accrual rates at levels applicable prior to breaks in service violated the minimum accrual requirements of ERISA; finding that request for recalculation of benefits and hence monetary relief "can only be said to be incidental to the declaration that defendants' pension plan is in violation of the law.  In other words, assuming a favorable verdict to the class, only because the pension plan is in violation of the law does the reformation and recalculation occur.  The primary relief sought is the declaration that ERISA has been violated. All other relief flows from the declaratory relief and is incidental"); *Cooper, supra*; *Bunnion v. Consolidated Rail Corp.*, 1998 WL 372644, *5 (E.D. Pa. May 14, 1998) (Rule 23(b)(2) certification appropriate for an ERISA claim even though the remedy would include monetary as well as injunctive relief because interests of proposed class were identical, certain key facts were dispositive of the entire class, and claim for injunctive relief was primary); *Shields v. Local 705*, 1996 U.S. Dist. Lexis 15772 at *17-19 (N.D. Ill. Oct. 23, 1996) (Rule 23(b)(2) certification granted; pension participants primarily sought determination regarding the crediting of service for purposes of benefit calculations even though they also sought an order directing the plan to make any payments still due; *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 602-03 (E.D. Mich. 1996) (class certified under Rule 23(b)(2) because plaintiffs were primarily seeking a declaration that their employer promised post-retirement reimbursement of the entirety of their medical expenses, even though, if they prevailed, the company would have to reimburse all of those expenses already incurred); *Diehl v. Twin Disc., Inc.*, 1995 WL 330637 at *6 (N.D. Ill. 1995) (class certified under Rule 23(b)(2) because plaintiffs primarily sought to enjoin modification of health insurance benefits, even though, if they prevailed, they would also obtain monetary relief; also citing several decisions reaching similar conclusions). with a particular type of service for purposes of calculation of benefits under pension plan, even though, if they prevailed, they wanted an order directing the plan to make such payments; also citing several decisions reaching similar conclusions); *Jansen v. Greyhound Corp.*, 692 F. Supp. 1022, 1028 (N.D. Iowa 1986) ("Any monetary relief awarded will flow from the declaratory and injunctive relief requested and is secondary to the declaratory/injunctive relief requested.  The Court finds that plaintiffs meet the requirements for (b)(2) certification.").

counsel in two other cases pending in this District: *Laurent v. PricewaterhouseCoopers LLP et al.,* Civ. No. 05-1291 (JR) (D.D.C.), a challenge to the legality of the PricewaterhouseCoopers LLP cash balance pension plan (dispositive cross-motions pending; class certification motion fully briefed and pending); and *Hall v. National Railroad Passenger Corporation*, Civ. No. 03-1764 (GK) (D.D.C.), challenging the alleged cut-back of an early retirement window (cross-motions for summary judgment pending; class certification motion fully briefed).

Counsel has also been appointed class counsel in cases outside of this District. Thus, he is co-lead class counsel in a pension and 401(k) class action against *New York Life Insurance Company, Mehling v. New York Life Ins. Co.*, Civ. No. 99-CV-5417 (E.D. Pa.) which was certified in October 2001. He is also class co-counsel on the committee of lawyers supporting co-lead class counsel in another certified case (largely settled at this point), *Tittle, et al. v. Enron Corp., et al.*, H-01-3913 (S.D. Tex.), the ERISA litigation involving Enron Corp.'s 401(k), ESOP and cash balance pension plans. Counsel also served in similar fashion as class co-counsel in a 401(k) class action against SBC Communications, Inc., *Gottlieb v. SBC Communications, Inc.*, CV-00-4139 AHM (C.D. Calif.) which settled in December 2002 for $10 million. He also served as co-lead counsel in two 401(k) class actions First Union Corporation, *Franklin v. First Union Corp.*, 99-CV-344 and 99-CV-610 (E.D. Va.), which settled, in June 2001, for $26 million.

Counsel has been called twice to testify before the Secretary of Labor's ERISA Advisory Council on issues of concern to plan participants and beneficiaries and is frequently invited to teach continuing legal education courses on the subject of ERISA class action litigation.

Counsel also has considerable trial and appellate experience. As the Court knows, counsel was a Staff Attorney for the Public Defender Service for the District of Columbia,

serving in that capacity for seven years.  Additionally, he has corporate, defense litigation

experience, having worked for several years in two large law firms, both in Washington, D.C.

and New York.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully requests that the Court certify this action

as a class action pursuant to Rule 23(b)(1)(A), 23(b)(1)(B) and/or 23(b)(2) and appoint

undersigned as class counsel.  A proposed Order is attached.

Dated:  January 31, 2006                   s/Eli Gottesdiener
                                            Eli Gottesdiener

                                            **GOTTESDIENER LAW FIRM, PLLC**
                                            1025 Connecticut Avenue, N.W., Suite 1000
                                            Washington, D.C.  20036
                                            Phone: (202) 243-1000
                                            Fax:    (202) 243-1001


                                            Attorney for Plaintiffs and the proposed Class and
                                            Subclasses

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2006, I caused a copy of the foregoing Memorandum, proposed Order and exhibits to be served upon Defendants through their counsel in this matter as follows:

**BY HAND**

Charles D. Tetrault
Vinson & Elkins, LLP,
1455 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-1008

**BY OVERNIGHT MAIL**

John L. Carter
Vinson & Elkins, LLP
2300 First City Tower
1001 Fannin St.
Houston, Texas 77002-6760


   s/Eli Gottesdiener
Eli Gottesdiener