UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELIZABETH LIGHTFOOT, *et al.*,

    Plaintiffs,

    v.

THE DISTRICT OF COLUMBIA, *et al.*,

    Defendants.

Civil Action No. 01-1484 (CKK)

**MEMORANDUM OPINION**
(January *14*, 2004)

**I: INTRODUCTION**

Presently pending before the Court is Plaintiffs' Renewed Motion for Class Certification. The District of Columbia government Defendants filed a praecipe informing the Court that they do not oppose certification of Plaintiffs' class. Defendant CLW/Creative Disability Management ("CLW") filed an Opposition, and Plaintiffs filed a Reply. After reviewing the parties' briefing and the relevant law, the Court shall grant Plaintiffs' Renewed Motion for Class Certification.

**II: BACKGROUND**

Before addressing the pending motion, the Court sets out the factual and procedural history of the above-captioned case. Plaintiffs filed this case on July 6, 2001, protesting the administration of the District of Columbia's Disability Compensation Act ("DCA"). Initially named as defendants in the case were the District of Columbia, various District of Columbia officials (collectively "D.C. Defendants"), and Mell, Brownell & Baker, a non-governmental entity that administered the DCA pursuant to a contract entered into with the District of Columbia. Shortly after filing the complaint, Plaintiffs moved for class certification. The basis

of Plaintiffs' suit is that the DCA, on its face and as applied, does not provide an opportunity to submit evidence or argument to demonstrate entitlement to benefits prior to modification or termination. This defect, according to Plaintiffs, is a violation of their due process rights under the 5th Amendment.

Plaintiffs sought a preliminary injunction to remedy the alleged violation of their due process rights and to reinstate disability benefits to those Plaintiffs whose benefits were terminated without the benefit of such process. *Lightfoot v. District of Columbia*, Civ. No. 01-1484, at 4 (D.D.C. Oct. 29, 2001) (memorandum opinion denying motion for preliminary injunction). In ruling on Plaintiffs' motion for preliminary injunction, the Court found that they were substantially likely to succeed on the merits, *id*. at 21, but denied their motion as they failed to establish that they were suffering irreparable injury, or that the public interest favored providing them the relief they sought, *id*. at 29.

After the Court's decision, Plaintiffs filed a second amended complaint, which among other things named CLW/Creative Disability Management ("CLW") as a Defendant. *See* 2d Am. Compl. ¶ 13. CLW replaced Mell, Brownell & Baker as third-party administrator of the DCA on October 1, 2001. Subsequently, Plaintiffs moved to voluntarily dismiss Mell, Brownell & Baker. On December 6, 2001, the Court granted Plaintiffs' motion to dismiss Mell, Brownell & Baker, and on January 2, 2002, denied without prejudice Plaintiffs' motion for class certification. All of the Defendants in the case moved to dismiss Plaintiffs' second amended complaint. However, following promising settlement discussions, the D.C. Defendants withdrew their motions. These settlement discussions have so far not resolved the case, in whole or in part.

On January 22, 2003, Plaintiffs filed a Motion for Leave to File a Third Amended

2

Complaint, and two days later filed the currently pending Renewed Motion for Class Certification. The Court granted Plaintiffs' Motion for Leave to File a Third Amended Complaint on September 7, 2003. In light of the amendments in the Third Amended Complaint, the Court denied without prejudice CLW's then-pending Motion to Dismiss, and ordered CLW to refile its Opposition to Plaintiff's Renewed Motion for Class Certification to account for the amendments made to the Complaint. On September 30, 2003, CLW filed an Answer to the Amended Complaint, and on October 14, 2003, CLW filed its Opposition to Plaintiff's Renewed Motion for Class Certification.[1]

### III: DISCUSSION

Rule 23(a) of the Federal Rules of Civil Procedure sets forth four prerequisites to a class action lawsuit: numerosity, commonality, typicality, and adequacy of representation. First, the class must be so numerous that joinder of all members is impracticable ("numerosity"). *See* Fed. R. Civ. P. 23(a)(1). Second, there must be questions of law or fact common to all class members

---

[1] CLW states on the first page of its second Opposition brief that it incorporates its first Opposition by reference into its second Opposition brief. CLW Mem. in Supp. of CLW's 2d Opp'n to Pl.'s Renewed Mot. for Class Certification ("CLW Mem.") at 1. The Court informs CLW that this practice is not appropriate and the Court declines to consider CLW's first Opposition in ruling on the pending Motion for Class Certification. Notwithstanding Plaintiffs' argument that CLW's incorporation violates Local Rule 7(e) (formerly Local Rule 7.1(e)) which limits Opposition briefs to 45 pages, Pls.' Reply at 2 n.1, CLW's prior Opposition brief was superseded by its current brief, which means the former brief was made void, when the Court set a new briefing schedule due to the intervening filing of a Third Amended Complaint. Therefore, the prior briefing cannot be properly considered by the Court. *Lightfoot v. District of Columbia*, 01-1484 (D.D.C. Sept. 7, 2003) (Order). Furthermore, in its attempt to incorporate the entire prior briefing wholesale, CLW does not provide Plaintiffs or the Court any guidance as to which arguments they want the Court to consider and which are no longer relevant. The Court finds this practice particularly inappropriate given that the Court's decision to allow CLW to refile its Opposition brief was done in the interest of providing CLW a full opportunity to respond to the motion given the amendments made to the Complaint. *Lightfoot v. District of Columbia*, 01-1484, *slip op.* at 9-10 (D.D.C. Sept. 7, 2003).

("commonality"). *See* Fed. R. Civ. P. 23(a)(2). Third, the claims or defenses of the representative parties must be typical of the claims and defenses of the class ("typicality"). *See* Fed. R. Civ. P. 23(a)(3). Fourth, the representative parties must fairly and adequately protect the interests of the class ("adequacy of representation"). *See* Fed. R. Civ. P. 23(a)(4).

Assuming that the putative class representatives can satisfy the requirements of Rule 23(a), they must also demonstrate that the claim is maintainable under one of the three types of class actions articulated in Rule 23(b). *See* Fed. R. Civ. P. 23(b); *Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231, 2245 (1997). Plaintiffs propose to certify their class under Rule 23(b)(2). Rule 23(b)(2) "permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Id*. (quoting Fed. R. Civ. P. 23(b)(2)). They define their proposed class as follows:

> All persons who have received or will receive disability compensation benefits pursuant to D.C. Code § 1-623.1, *et seq*. and whose benefits have been terminated, suspended or reduced since June 27, 1998 or whose benefits may be terminated, suspended or reduced in the future. "Disability compensation benefits" is defined to exclude a scheduled award provided in D.C. Code § 1-623.7 expiring at the end of the statutory term, continuation of pay provided in D.C. Code § 1-623.18(a) expiring at the end of the statutory term, funeral expenses provided in D.C. Code § 1-623.34, a fully paid lump sum settlement provided in D.C. Code §1-623.35, and credited compensation leave provided in D.C. Code § 1-623.43.

Pls.' Renewed Mot. for Class Certification ("Pls.' Mot.") at 1.

CLW spends a good deal of its Opposition brief challenging Plaintiffs' standing to certify their proposed class. CLW Mem. at 7-22. However, the Supreme Court has instructed that Rule 23's requirements should be addressed before examining Article III standing. The Supreme Court instructed that

> [o]rdinarily, of course, this or any other Article III court must be sure of its own

4

jurisdiction before getting into the merits. But the class certification issues are . . . logically antecedent to Article III concerns and themselves pertain to statutory standing, which may properly be treated before Article III standing. Thus the issue about Rule 23 certification should be treated first, mindful that the Rule's requirements must be interpreted in keeping with Article III constraints.

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (internal quotation marks and citations omitted); *see also Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (following *Ortiz*).[2] Accordingly, the Court addresses the Rule 23 requirements before turning to questions of Article III standing.

### 1. *Rule 23(a) Prerequisites*

As noted *supra*, in order to certify Plaintiffs' proposed class, Plaintiffs must demonstrate that their proposed class satisfies the four prerequisites of Rule 23(a). Before addressing these requirements, the Court asks whether or not Plaintiffs' proposed class is "clearly defined," a requirement not mentioned in the Federal Rules of Civil Procedure, but one which has been "routinely require[d]" in order to "help the trial court manage the class." *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998).

> It is not designed to be a particularly stringent test, but plaintiffs must at least be able to establish that "the general outlines of the membership of the class are determinable at the outset of the litigation." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1760 at 118. In other words, the class must be sufficiently definite "that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* at 121.

*Id.* Plaintiffs describe their class definition as "limited, objective and precise. The class consists

---

[2] Given this authority, the Court declines to follow the decisions cited by CLW which provide that Article III standing issues must be decided before determining whether Rule 23's requirements have been met. *See* CLW Mem. at 8 (citing *Herlihy v. Ply-Gem Indus., Inc.*, 752 F. Supp. 1282, 1291 (D. Md. 1990); *Dash v. Firstplus Home Loan Trust*, 248 F. Supp. 2d 489, 504 (M.D.N.C. 2003)). Moreover, the Court does not find the *Dash* decision stands for the proposition that Article III standing issues must be addressed first.

of individuals whose disability compensation benefits have been terminated, suspended, or modified since June 27, 1998, or may be in the future." Pls.' Mem. of P. & A. in Supp. of their Renewed Mot. for Class Certification ("Pls.' Mem.") at 4. They have included language "excluding those who appropriately stopped receiving" certain benefits. *Id*. CLW does not challenge the definition of the class, and the Court finds that Plaintiffs have provided a definition that provides the general outline of the membership of the class. The Court notes that "[t]he fact that the class includes future members does not render the class definition so vague as to preclude certification." *Probe v. State Teachers' Retirement Sys.*, 780 F.3d 776, (9th Cir.), *cert denied*, 476 U.S. 1170 (1986) (citing 7 C. Wright & A. Miller, Federal Practice and Procedure § 1760 at 580-81 (1972)).[3]

The Court will, however, make one small change to the Plaintiffs' class definition. Plaintiffs describe the future class members as those "whose benefits *may* be terminated, suspended or reduced in the future." Pls.' Mot. at 1 (emphasis added). The choice of the word "may" means that all individuals who "have received or will receive disability compensation benefits" are members of the class, because any one of those persons' "benefits may be terminated, suspended or reduced in the future." *Id*. Plaintiffs' briefing reveals that this result

---

[3] The class definition before the *Probe* court was:
all male certified employees "who were (since February 8, 1976), are or will be employed in positions entitling them to membership in the STRS [State Teachers' Retirement System], and who are currently receiving, eligible to receive or in the future will receive or may be eligible to receive retirement benefits from the STRS under Option 2 or 3 as provided in the Education Code, Section 24200."
*Probe*, 780 F.2d at 779.

6

was unintended,[4] and the Court declines to endorse such a class even if that was Plaintiff's intention. The Court shall change the troublesome provision to read "whose benefits *will* be terminated, suspended or reduced in the future." This change reflects the fact that a future member of the class does not become a class member until his or her benefits are affected. *Cf. Dixon v. Bowen*, 673 F. Supp. 123, 127 (S.D.N.Y. 1987) ("Thus at any given time the class does not contain generations of claimants yet unborn. Instead, individuals become class members only when they apply for benefits.").[5]

The Court now turns to the Rule 23(a) prerequisites.

Plaintiffs maintain that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). They submit that the District of Columbia's Director of the Office of Risk Management "testified under oath at a deposition that approximately 1,000 people were receiving benefits," and that a D.C. Freedom of Information Act request revealed that between December 1998 and November 2000, 640 termination notices were issued. Pls.' Mem. at 4-5. CLW does not challenge Plaintiffs' representations or claim that the numerosity prerequisite is not met. "Although Rule 23 requires no minimum number of class members, numerosity is generally satisfied by a proposed class of at least 40 members." *Thomas v.*

---

[4] *See, e.g.*, Pls.' Mem. at 6 ("The resolution of the constitutionality of Defendants' . . . procedures stands to impact each of those individuals who has been or *will* be terminated or suspended from the program. Moreover, Plaintiffs' due process challenges to the content of the termination notices, information regarding appeal rights, rationality of decision-making and the absence of written policies and procedures are aimed at redressing unlawful conduct affecting members of the class who have been or *will* be terminated.") (emphasis added).

[5] The Court also notes that this wording reflects that of other cases certifying government benefits class actions with future members. *See Dixon*, 673 F. Supp. at 127; *Smith*, 579 F. Supp. at 220; *but see Kendall*, 689 F. Supp. at 357 (defining class as those "who are at present, or who at any time in the future may be, recipients" of certain types of benefits).

*Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996), *aff'd in part and rev'd. in part*, 139 F.3d 227 (D.C. Cir. 1998). The Court is persuaded that Plaintiffs' representations establish that this class is too numerous to make joinder practicable and therefore finds that Plaintiffs have established the first prerequisite of Rule 23(a).

Plaintiffs also contend that there are questions of law or fact common to all class members. *See* Fed. R. Civ. P. 23(a)(2). They provide that since all of the class members are receiving, have received, or will receive disability benefits, the allegedly unconstitutional termination, suspension, and reduction procedures "stand[] to impact each of those individuals who has been or will be terminated or suspended from the program." Pls.' Mem. at 6. This suit's "due process challenges to the content of the termination notices, information regarding appeal rights, rationality of decision-making and the absence of written policies and procedures," involve allegedly "unlawful conduct affecting members of the class who have been or will be terminated." *Id*. CLW does not challenge that there are questions of law and fact common to the class. "The commonality test is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). The Court finds that Plaintiffs have established this prerequisite, as all members of the class will be affected by the resolution of the constitutionality of the District of Columbia's disability benefits program.

Plaintiffs argue that the claims of the class representatives are typical of those of the class. Pls.' Mem. at 7. They provide that

> each of the named Plaintiffs have been or may in the future be subject to policies and procedures that result [*sic*] the termination, suspension or modification of benefits without adequate notice and opportunity to demonstrate a continuing entitlement to

8

>benefits. Further, each are subject to policies which are neither written and consistently enforced nor promulgated pursuant to the D.C. Administrative Procedure Act.

*Id*. CLW challenges Plaintiffs' assertion that their class satisfies the typicality prong of the Rule 23(a) analysis. CLW Mem. at 22. They argue that the named Plaintiffs who do not possess claims against CLW are not "similarly situated" to those members of the class who do possess such claims. *Id*. CLW also contends that none of the named Plaintiffs have claims typical of those members of the class who have not had their benefits reduced, terminated or suspended, but may in the future. *Id*.[6] Defendants provide no caselaw in support of these arguments. *See id*. at 22-23. Plaintiffs counter, arguing that all class members suffered or will suffer from the same procedural defects that harmed the named Plaintiffs. Pls.' Reply at 5-6. They also contend that the juridical link theory resolves any disconnect between those named Plaintiffs harmed under the previous plan administrator and those harmed by CLW.

After examining the parties' arguments, the Court finds that the typicality requirement is met. The typicality prerequisite is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). The requirement "is satisfied if each class member's claim arises from the same course of events that led to the claims

---

[6] The Court notes that to the extent CLW's arguments target the Plaintiffs' proposed class definition with its use of the word "may" to describe future class membership, the Court has changed the definition to include only those future members whose benefits "will" be negatively affected in the future. *See supra*. The Court addresses CLW's arguments, many of which challenge the inclusion of future membership, presuming that these arguments are not satisfied by the Court's alteration of the class definition and oppose the inclusion of any persons whose injuries lie in the future.

9

of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Pigford*, 182 F.R.D. at 349 (citing *Casey*, 43 F.3d at 57). The Court notes that Plaintiffs aim to remedy alleged violations in the disability program's procedures that affect all who have had their benefits altered or will have their benefits altered in the future. This fact effectively places the named Plaintiffs' incentives in line with all the members of the class. As for the fact that the benefits of some of the class representatives were affected before CLW became the program's administrator, the Court notes that the Third Amended Complaint added Plaintiffs whose benefits were affected under CLW's administration of the program, and CLW does not provide how the change in administrators makes the claims of those who were denied benefits after CLW took control of the program substantively atypical from those whose benefits were affected before CLW became the program's administrator. The Court notes that both CLW and Mell, Brownell & Baker administered plans at the direction of the District of Columbia and pursuant to its laws and regulations. Accordingly, the Court finds that the named Plaintiffs' claims are typical of those of the class members.

Finally, Plaintiffs maintain that they will adequately and fairly protect the interests of the class. Pls.' Mem. at 8. In order to determine whether Plaintiffs are adequate class representatives, the Court examines factors such as the quality of the class counsel and the existence of any conflict of interest between the class representatives and the absentee members of the class. *Pigford*, 182 F.R.D. at 350 (citing *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)). Defendants do not challenge Plaintiffs' satisfaction of this prerequisite, and a review of Plaintiffs' briefing provides a clear indication that they are represented by able counsel and do not have a conflict of interest with the absentee members of

the class.

The Court therefore finds that Plaintiffs have met all four prerequisites to class certification under Rule 23(a).

### 2. *Rule 23(b)(2)'s Requirement*

As stated *supra*, Rule 23(b)(2) "permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Amchem*, 117 S. Ct. at 2245 (quoting Fed. R. Civ. P. 23(b)(2)). As Plaintiffs explain, their suit "challenge[s] a disability compensation system that terminates, suspends, or reduces their benefits without providing a predeprivation opportunity to respond, that provides inadequate notices, that fails to engage in reasoned decisionmaking based on a full evidentiary record and that lacks written and consistently applied policies and procedures." Pls.' Mem. at 16. Plaintiffs claim that their request for declaratory and injunctive relief to remedy these allegedly unconstitutional actions places their class properly within Rule 23(b)(2)'s parameters. *Id*. Plaintiffs acknowledge that they also seek monetary relief, in the form of reinstatement of benefits, reimbursement of out-of-pocket medical expenses and damages resulting from CLW's breach of contract, but that these forms of monetary relief are "ancillary to the systemic declaratory and injunctive relief sought." *Id*. CLW, in response, argues that Plaintiffs' class does not meet the requirements of Rule 23(b)(2). CLW claims that "Plaintiffs fail to provide any support for the notion that the monetary relief sought is ancillary to the injunctive or declaratory relief." CLW Mem. at 23. Conceding that Rule23(b)(2) class actions may involve claims for monetary relief, CLW contends that the monetary damages sought are not incidental to the other relief sought. CLW argues that

11

> Plaintiffs seek monetary relief in the form of the reinstatement of benefits for those whose benefits were unlawfully terminated, suspended, or reduced, and reimbursement of out of pocket medical expenses incurred as damages as the result of CLW's alleged breach of its contract with the District of Columbia. These alleged monetary damages do not flow directly from any finding of liability as to the deficiency of process regarding pre-deprivation of benefits. Each claim will be addressed separately.

*Id*. at 24-25. CLW maintains that such relief will require individualized inquiries which will be separate from the questions concerning the program's procedures and therefore inappropriate for Rule 23(b)(2) actions. Plaintiffs respond, noting that the declaratory and injunctive relief they seek

> includes a finding that the Government Defendants violated the D.C. Administrative Procedure Act, an injunction against further violations, and an order enjoining the Defendants to implement procedures for termination, suspension, and modification of benefits that comply with the Constitution and the DCAPA. The declaratory and injunctive relief requested also includes an order enjoining Defendants to create a "retroactive relief" procedure affording former beneficiaries an opportunity to reopen terminations, modifications, and suspensions of benefits that have taken place since June 27, 1998. A result of that procedure – part and parcel of the injunctive relief requested – is that some members of the putative class will recover monetary relief upon a finding that their termination, suspension or modification was erroneous in whole or in part.

Pls.' Reply at 9. In terms of Plaintiffs' breach of contract claim, they contend that the remedy they seek is "an order restoring the benefits of the individuals deprived of the procedural opportunities directed." *Id*. at 11. Therefore, Plaintiffs maintain that the monetary relief sought is incidental to the injunctive and declaratory relief requested.

"Courts have generally permitted (b)(2) classes to recover monetary relief in addition to declaratory or injunctive relief, at least where the monetary relief does not predominate." *Eubanks v. Billington*, 110 F.3d 87, 92 (D.C. Cir. 1997); *see also* Fed. R. Civ. P. 23(b)(2) advisory committee's note ("The subdivision does not extend to cases in which the appropriate

12

final relief relates exclusively or predominantly to money damages."). Here, Plaintiffs' requests for monetary relief – as articulated in their Reply brief – do not "predominate" because they flow from their requests for declaratory and injunctive relief remedying the allegedly unconstitutional disability benefits program. *See Coleman v. Pension Benefit Guaranty Corp.*, 196 F.R.D. 193, 199 (D.D.C. 2000). This monetary relief, therefore is "equitable in nature because it seeks restitution, rather than damages, thus rendering it appropriate for certification under Rule 23(b)(2)." *Id*. (citing *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 899 (7th Cir.1999)). Moreover, "this case is not one in which 'the underlying premise of (b)(2) certification--that the class members suffer from a common injury that can be addressed by classwide relief--begins to break down when the class seeks to recover back pay or other forms of monetary damages to be allocated based on individual injuries.'" *Id*. (citing *Eubanks*, 110 F.3d at 95). Should Plaintiffs prevail and the Court order the declaratory and injunctive relief requested, it will fall to the District of Columbia and CLW, as the disability program's administrator, to develop procedures that address the claims of those class members whose disability benefits were improperly terminated, reduced or suspended. Plaintiffs' framing their request for "monetary relief" in this way means that should Plaintiffs prevail, the Court will have little to no involvement in the actual adjudication of each member's claim for monetary relief; Plaintiffs' monetary damages will be awarded through an administrative process. Not only does this fact eliminate concerns about Plaintiffs' monetary relief predominating their claims for injunctive and declaratory relief, it also explains the necessity of including CLW as a Defendant in this suit. The Court therefore concludes that the monetary relief requested does not predominate, and therefore is not a bar to certifying Plaintiffs' class under Rule 23(b)(2).

13

## 3. Article III Standing

Having concluded that Plaintiffs have met the Rule 23 "standing" requirements, the Court now turns to CLW's arguments that Plaintiffs lack Article III standing to represent the class.

CLW argues that each "named Plaintiff must establish personal standing in the form of causes of action against each Defendant. . . . [I]f *any* of the named Plaintiffs or putative class members fails to satisfy the requirements of standing as to *any* of the Defendants, class certification is improper for lack of standing." CLW Mem. at 8-9 (emphasis in original). CLW maintains that "not every putative class member can sustain a cause of action against Defendant CLW." *Id*. at 9. This is because the injuries of some of the putative class members occurred prior to CLW's administration of the program in question. *Id*. at 10.[7] Therefore, argues CLW, these class members lack standing as to claims against CLW based on an inability to satisfy the causation or "traceability" prong of the standing analysis. *Id*. at 11. CLW points to lead named Plaintiff Elizabeth Lightfoot as an example of a Plaintiff in this case whose harm, if any, had no connection at all to CLW. *Id*. at 12-14. CLW also maintains that many Plaintiffs cannot allege an injury-in-fact, another requirement of Article III standing. *Id*. at 16. CLW argues that those Plaintiffs who may, but have not yet been injured by the allegedly unconstitutional procedures of the disability benefits program cannot satisfy this prong of the standing analysis because they cannot show that they are in imminent danger of sustaining a direct injury in the future. *Id*. at

---

[7] These would be the class members whose benefits were reduced, terminated or suspended between June 27, 1998, and when CLW became the disability program's administrator on October 1, 2001. CLW Mem. at 12.

17.[8]

Plaintiffs respond in their Reply brief arguing that the "causation" prong of the Article III standing analysis is met through the doctrine of juridical links, which applies when "all defendants are 'juridically related in a manner that suggests a single resolution of the (entire) dispute would be expeditious.'" Pls.' Reply at 3 (quoting *EEOC v. Trucking Employers, Inc.*, 75 F.R.D. 682, 690 (D.D.C. 1977)). They contend that the "juridical link exception was established for cases such as this one where a putative class has been injured by multiple actors bound to act under a state law or practice whose legality is being challenged." *Id*. Plaintiffs note that since CLW "admits to being an extension of the Government Defendants and thus a state actor, claims to follow their rules and directives, along with 'best practices' that serve to implement the common statute," the juridical link exception applies to the case at bar and renders irrelevant the fact that some Plaintiffs were allegedly harmed before CLW's administration of the program and others during CLW's involvement. *Id*. at 4 (citing CLW's Opp'n. to Pls.' Mot for Summ. J. on Counts Six & Seven of the 3d Am. Compl. at 3-4). Plaintiffs also rely on an ancillary form of the

---

[8] CLW also argues that Plaintiffs must also establish separately their standing to bring a suit for declaratory and injunctive relief, and that they have not established the likelihood of a future injury as to those members of the class who "may" be adversely affected by the program's procedures in the future. CLW Mem. at 19-22. CLW maintains that for Plaintiffs to have standing to seek injunctive or declaratory relief they must show "a very significant possibility" of future harm, and that this requirement cannot be met when CLW has not made a determination about the reduction, termination or suspension of these future members' benefits. *Id*. at 19-20 (quoting *Coral Constr. Co. v. King County*, 941 F.2d 910, 929 (9th Cir. 1991)). This argument fails. This action includes Plaintiffs who – if their allegations prove true – have already suffered harm. Therefore, the concerns about speculative injury inherent in suits seeking only injunctive or declaratory relief are eliminated here. Furthermore, for a future member of the class to become a member of the class, he or she will have to suffer harm; specifically, he or she will have to have his or her benefits suspended, reduced or terminated by procedures that are allegedly constitutionally deficient. Accordingly, the Court rejects CLW's arguments regarding special standing requirements for actions seeking declaratory and injunctive relief.

juridical link doctrine which is established by a contractual relationship between defendants "obligating them to act in a manner being legally challenged." *Id*. at 5. Finally, Plaintiffs dispute the notion that their class may not be certified because it includes members who have not, but may suffer harm in the future. *Id*. at 8. They note that it is common practice to certify classes that include members who will be injured in the future. *Id*.

The Court rejects CLW's arguments and finds that Plaintiffs have standing to bring the class action under the definition submitted.[9] With regard to the causation concerns CLW proffers, the Court finds that the juridical link doctrine applies to the case at bar.[10] This doctrine is an exception "to [the] principle that each member of a plaintiff class must have a cause of action against each defendant," and applies to "[i]nstances in which all defendants are *juridically related* in a manner that suggests a single resolution of the dispute would be expeditious." *Thompson v. Bd. of Educ.*, 709 F.2d 1200, 1204-05 (6th Cir. 1983) (emphasis in original) (citing to *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 462 (9th Cir. 1973)). The *Thompson* court noted that the exception is most often applied to situations "[w]here all members of the

---

[9] As an aside, the Court notes that CLW's arguments would not preclude the certification of a 23(b)(2) class; at the very most, CLW's arguments would require the Court to limit the class to those that have suffered harm and to establish two classes, one for those Plaintiffs whose harm came under CLW's administration and one for those whose injury occurred prior to CLW's involvement with the Program. Since the Court rejects CLW's arguments, it finds no need to alter the class as defined by Plaintiffs.

[10] The Court notes that CLW did not request to file a surreply to respond to the juridical link argument articulated in Plaintiff's Reply brief. The Court has conducted its own research and has not found a single case where a United States Court of Appeals has rejected the legitimacy of the juridical link doctrine. The Court notes that while this Circuit has not yet ruled on the doctrine, the Sixth, Seventh and Ninth Circuits, as well as Judge William Bryant of this District and numerous other District Court judges, have commented favorably or applied the doctrine in cases before them.

defendant class are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of state-wide application, which is alleged to be unconstitutional." *Id*. at 1205 (quoting *Mudd v. Busse*, 68 F.R.D. 522, 527-28 (N.D. Ind. 1975)). Even though CLW is not an official entity of the District of Columbia, the situation presented here fits the typical juridical link scenario. CLW, by administering the District of Columbia's disability benefits program pursuant to the D.C. law at issue in this case, is effectively an arm of the District of Columbia. *See Payton*, 308 F.3d at 681-82 ("If the defendants with whom the named representative did not interact directly are following a common statute (and this common factor assures that the representative has the same legal claim as the unnamed parties–or, to use the terminology other courts have adopted, the defendants are 'juridically linked'), we see nothing in either their standing doctrine or Rule 23 that automatically precludes the use of the class action device."); CLW Opp'n to Pls.' Mot. for Summ J. at 3 (CLW "serves essentially as 'an extension' of the staff of the Claims Bureau, and at the government's direction."). CLW's contractual relationship with the District of Columbia also provides a juridical link that makes CLW a proper Defendant in this case. *See United States v. Trucking Employers, Inc.*, 75 F.R.D. 682, 689-90 (1977) (finding that contractual agreements binding various employers to challenged employment practices made juridical link theory applicable). Furthermore, should Plaintiffs prevail on any or all of their claims, the relief they seek can only come through the current administrator of the program, CLW, and the District of Columbia government Defendants. Pls.' Reply at 5. Given this fact and the juridical link between CLW and the District of Columbia, the Court finds that the juridical link doctrine effectively nullifies CLW's concerns about the causation prong of the Article III standing analysis.

17

The Court also finds that CLW's injury-in-fact arguments fail. As Plaintiffs point out, other courts have approved classes that included future members in cases raising similar claims to the ones raised here. Pls.' Reply at 8 (citing *Kendall v. Brock*, 689 F. Supp. 354, 357 (D. Vt. 1987);[11] *Baksalary v. Smith*, 579 F. Supp. 218, 220 (E.D. Pa. 1984)).[12] Furthermore, including those who will be harmed by the allegedly unconstitutional procedures

> protects [those] who would otherwise have to wait for defendant's illegal application of the . . . regulation to occur before they seek a post-hoc remedy. Such unnecessary harm and repetitive litigation is precisely what the class action device is designed to prevent. Where the challenged "practice is alleged to be continuing . . . the class properly includes future as well as past applicants who will be affected by it." *Kohn v. Royall Koegel & Wells*, 59 F.R.D. 515, 520 (S.D.N.Y. 1973). Thus, class actions

---

[11] The *Kendall* court certified a plaintiff class defined as follows:
All residents of Vermont who are at present, *or who at any time in the future may be*, recipients of any of the following types of benefits payable under the Federal Employees' Compensation Act, and who are at risk of having those benefits terminated or reduced on any basis other than the receipt by the Office of Workers' Compensation Programs of substantial evidence of death, return to work, an individual's reaching a particular age, the conclusion of a pre-determined schedule award period, or the existence of a statutory bar under 5 U.S.C. §§ 8106(b), 8106(c)(ii) [sic], 8116(b), or 8131-8132 :
wage loss compensation (received or expected to be received, for 60 days or more)
medical benefits (where the service at issue has been received, or can be expected to be received, for 60 days or more, and where the termination or reduction is initiated by the Office of Workers' Compensation Programs)
attendant allowances
augmented compensation
survivors' benefits
schedule award (where the termination or reduction occurs before the scheduled period has run out).
*Kendall*, 689 F. Supp. at 357 (emphasis added).

[12] The *Smith* court certified a plaintiff class defined as follows: "all persons who have been or will be receiving benefits pursuant to the Pennsylvania Workmen's Compensation Act and who have had *or will have* such benefits terminated, suspended, reduced or otherwise deprived without advance notice and opportunity for a prior evidentiary hearing." *Smith*, 579 F. Supp. at 220 (emphasis added).

18

under rule 23(b)(2) are often defined in such a way as to protect individuals who will face the same injury that threatened those class members who have already been injured at the time of class certification. *See, e.g., Henry v. Gross*, 803 F.2d 757, 762 (2d Cir. 1986); *Woe v. Cuomo*, 729 F.2d 96 (2d Cir.) *cert. denied*, 469 U.S. 936, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984).

*Dixon v. Bowen*, 673 F. Supp. 123, 127 (S.D.N.Y. 1987) (ruling on class defined as "[a]ll persons in the state of New York who have filed or will file applications for disability benefits . . . and whose benefits have been or will be terminated pursuant to the policies [set forth in the severity regulation] . . ."). A leading treatise on class actions has concluded that "future applicants for benefits properly have been included in government benefits class actions." 7 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 23:10 (4th ed. 2003). The Court therefore concludes that the injury-in-fact prong of the standing analysis does not bar the certification of Plaintiffs' class, and that Plaintiffs have standing to bring this class action.

## IV: CONCLUSION

After reviewing the parties' briefing, the submitted exhibits, and the relevant law, the Court finds that Plaintiffs' proposed class action meets all of the requirements of Rule 23 and that they have established that they have standing to bring the suit as defined. Accordingly, the Court shall grant Plaintiffs' Renewed Motion for Class Certification. An Order accompanies this Memorandum Opinion.

Date: January *14*, 2004

                                           */s/*
                                           COLLEEN KOLLAR-KOTELLY
                                           United States District Judge