# TAB B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANITA POTHIER, *et al.*, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA CORPORATION, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CIVIL NO. 04-458-GPM<br>)<br>)<br>)<br>)<br>) |

# **MEMORANDUM AND ORDER**

**MURPHY, Chief District Judge:**

This matter came before the Court on May 2, 2005, for a hearing on Defendants' motion to transfer venue under 28 U.S.C. § 1404(a) (Docs. 66, 72) and Plaintiffs' motion under Federal Rule of Civil Procedure 21 to add a party-plaintiff (Doc. 89). For the following reasons, the Court finds that transfer is appropriate, and this action is transferred to the United States District Court for the Western District of North Carolina for further proceedings.

Plaintiffs filed this putative class action alleging various theories under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* For purposes of this venue motion, the particulars of the claims alleged in the second amended complaint (Doc. 46) need only be described briefly. Generally, Plaintiffs challenge the calculation - specifically, the formula used - and administration of Defendants' cash balance plans.[1] Defendants include Bank of America

---

[1] The intricacies of the plans at issue need not be described for purposes of this motion.

Page 1 of 7

Corporation and Bank of America, N.A., (the Company Defendants); PricewaterhouseCoopers, L.L.P.; The Bank of America Pension Plan and The Bank of America 401(k) Plan (the Plan Defendants or the Plans); The Bank of America Corporation Corporate Benefits Committee; and over 60 individuals that Plaintiffs contend are fiduciaries by way of their service as Company Directors, members of the Compensation Committee, and members of the Benefits Committee.

In Count One, Plaintiffs challenge the formula used in calculating their lump sum benefits. Plaintiffs allege age discrimination in Count Two. In Count Three, Plaintiffs claim that Defendants violated ERISA by eliminating protected benefits. In Count Four, Plaintiffs claim that Defendants violated ERISA's "anti-backloading rules." In Count Five, Plaintiffs claim that the Company Defendants violated ERISA by failing to design and implement a plan with objectively determinable benefits. In Count Six, Plaintiffs claim that all Defendants have directly or indirectly violated ERISA's anti-inurement clause. In Count Seven, Plaintiffs claim that the fiduciary Defendants knew or should have known that they caused one or both of the Plans to engage in transactions that constituted party-in-interest transactions prohibited by ERISA. Plaintiffs further claim that the fiduciary Defendants engaged in self-dealing in Count Eight. Plaintiffs claim breach of fiduciary duties in Count Nine and breach of co-fiduciary duties in Count Ten. In Count Eleven, Plaintiffs seek disgorgement of profits from Defendant PricewaterhouseCoopers, L.L.P., and the Company Defendants for any profits received as a result of breaches of fiduciary and co-fiduciary duties. In Count Twelve, Plaintiffs claim that Defendants discriminated against any 401(k) Plan participants who did not "consent" to have their accounts/assets transferred to the Pension Plan. (Doc. 46) Notably, in Counts One through Five, in which Plaintiffs challenge the calculation of benefits, Plaintiffs specifically state that they "did not exhaust the administrative remedies provided under

the terms of the Pension Plan prior to initiating this lawsuit because they do not here seek 'benefits under the terms of the plan,' but rather, *inter alia*, a declaration" that the Pension Plan's terms, methods, design and/or administration violated ERISA (Doc. 46, ¶¶ 113, 119, 127, 133, 142).

A court may transfer a case under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice ... to any other district or division where it might have been brought." When deciding a motion to transfer, the court must specifically analyze whether transfer is warranted (1) for the convenience of the parties; (2) for the convenience of the witnesses; and (3) in the interest of justice. *Chicago Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 302 (7th Cir. 1955). Although limited by these three factors, the Court has broad discretion in deciding whether to transfer a case. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981). This Court is mindful that Plaintiffs' choice of forum should not be "lightly set aside." *Igoe*, 220 F.2d at 302. In other words, a plaintiff's choice of forum is entitled to great deference, and it can be assumed that a plaintiff's choice of forum is convenient. *Reyno*, 454 U.S. at 255-56. However, while the Seventh Circuit Court of Appeals apparently has not spoken directly to the issue, other courts have held that when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight. *See, e.g., Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Countryman v. Stein Roe & Farnham*, 681 F. Supp. 479, 482-83 (N.D. Ill. 1987); *cf. Tice v. American Airlines, Inc.*, 162 F.3d 966, 974 (7th Cir. 1998) (acknowledging that the district court was entitled to give "some" weight to the representative plaintiffs' choice of forum).

As the movants, Defendants bear the burden of showing that the transferee forum is clearly more convenient. *See, e.g., Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986); *FDIC v. Citizen Bank & Trust Co.*, 592 F.2d 364, 368 (7th Cir. 1979). In this case, the Court finds

that Defendants have met their burden; in fact, this is not even a close case. The facts as set forth in the second amended complaint and Defendants' briefs and supporting affidavits are as follows. Bank of America Corporation maintains its principal place of business and corporate headquarters in Charlotte, North Carolina, which is within the Western District of North Carolina (Doc. 68, Ex. A, ¶ 5). From its headquarters, Bank of America Corporation sponsors both Plans (*id.* at ¶ 6). Bank of America Corporation Corporate Benefits Committee administers the Plans from the Western District of North Carolina (*id.* at ¶¶ 10-11). The Bank of America Corporation Management Compensation Committee and the Compensation Committee of the Bank of America Corporation Board of Directors meet regularly in Charlotte, and their meeting minutes and records are maintained in the Western District of North Carolina (*id.* at 12-13). The design and development of the Pension Plan's cash balance formula and the decision to "permit" the "voluntary" transfer of 401(k) Plan assets to the converted cash balance plan took place in the Western District of North Carolina, including consultations with auditor PricewaterhouseCoopers, L.L.P., actuary Towers Perrin, and legal counsel Kennedy Covington Lobdell & Hickman, L.L.P., all of which performed their services within the Western District of North Carolina (*id.* at ¶¶ 15-20). The Pension Plan's cash balance formula was approved in the Western District of North Carolina (*id.* at ¶ 30). Essential Plan functions are coordinated and supervised from the Western District of North Carolina, including decisions regarding the investment of Pension Plan assets (*id.* at ¶¶ 32-42). Bank of America, N.A., is headquartered in Charlotte (Doc. 46, ¶ 28).

The only connection that the Court can find to the Southern District of Illinois is that as of June 30, 2004, the date this action was filed, of the 111,800 Pension Plan participants with "cash

balance accounts,"[2] approximately 100 worked and accrued benefits in the Southern District of Illinois, while approximately 11,500 worked and accrued benefits in the Western District of North Carolina (Doc. 68, Ex. A, ¶ 46c). There are, however, an additional 750 employees who live in the Southern District of Illinois, but because they do not work in the Southern District of Illinois, they do not accrue benefits here, and they do not receive communications regarding the Pension Plan here (*id.* at n.1). As of June 30, 2004, of the 24,900 participants, beneficiaries, or alternate payees with vested "cash balance accounts" relating to employees who had terminated employment on or after July 1, 1998, approximately 175 were in the Southern District of Illinois, while 1,425 were in the Western District of North Carolina (*id.* at ¶ 46d). As of June 30, 2004, of the almost $5 billion total balance of all "cash balance accounts" in the Pension Plan, approximately $8 million was credited to the "accounts" of participants whose benefits accrued in the Southern District of Illinois, while approximately $364 million was credited to the "accounts" of participants in the Western District of North Carolina (*id.* at ¶ 46e). Approximately $20.8 million was credited to the "accounts" of participants who live in this District but who do not accrue benefits in this District (*id.* at n.2). Finally, PricewaterhouseCoopers, L.L.P., does not maintain an office in the Southern District of Illinois (Doc. 72, Ex. 1).

The convenience of the parties factor clearly favors transfer in this case. No Plaintiff, except for the individual that Plaintiffs seek to join as a representative plaintiff, resides in Illinois. The Western District of North Carolina clearly is more convenient for Defendants, including the more than 60 individual Defendants - most of whom reside in the Western District of North Carolina (*see*

---

[2]The Court uses quotation marks because in a cash balance plan, the employee has no actual account. A cash balance plan is a type of defined benefit plan that resembles a defined contribution plan because it provides the employee with a *hypothetical* account balance. *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 758 (7th Cir. 2003).

Doc. 68), and the Court does not see how it is an inconvenient forum for Plaintiffs. In fact, Plaintiffs' counsel is from Washington, D.C.

With respect to the convenience of the witnesses factor, the Court is not sure at this point who the witnesses will be, but Plaintiffs' second amended complaint attacks the decisions made in designing and administering the Plans and charges all those in any way related to those decisions. Therefore, it is reasonable to look to where those decisions were made and to where the decision-makers may be found. As set forth above, all of the decisions were made in the Western District of North Carolina, and virtually all of the relevant witnesses reside in the Western District of North Carolina (*see* Doc. 68, Ex. A). The Court has been told of no witness that resides in the Southern District of Illinois. Plaintiffs argue that the Court should not decide this motion on the convenience of Defendants' witnesses. However, Plaintiffs have chosen to frame their allegations so broadly as to implicate almost everyone having anything to do with the Plans - even former Directors of Bank of America Corporation's predecessor. A plaintiff cannot file a putative nationwide class action against multitudinous defendants alleging broad, potentially fact-intensive theories and then argue that the witnesses the defendants feel may be necessary to defend those claims should not be considered as necessary witnesses because the case may be decided on summary judgment, which is what Plaintiffs tried to argue during the May 2nd hearing. Moreover, the Court reiterates that Plaintiffs have sued over 60 individual Defendants for breach of fiduciary duties, and most of them live in the Western District of North Carolina. Clearly, they will be witnesses should this case proceed to trial, which at this point, this Court must assume. The Court need only remind Plaintiffs that they are the masters of their complaint.

The interest of justice analysis relates to "the efficient functioning of the courts, not to the

merits of the underlying dispute." *Coffey*, 796 F.2d at 221. "For example, the interest of justice may be served by a transfer to a district where the litigants are more likely to receive a speedy trial." *Id*. The Court has reviewed the statistics submitted by Plaintiffs comparing the caseloads in this District and the Western District of North Carolina and rejects Plaintiffs' contention that the Western District's docket is more congested than the docket of this Court. In fact, for the 12-month period ending September 30, 2004, the Western District of North Carolina reported 50 civil cases over 3-years-old while this District reported 72 (Doc. 97, Ex. 5). This Court finds no reason that the Western District of North Carolina will not ably and swiftly adjudicate this action.

For the foregoing reasons, the Court finds that the Western District of North Carolina is a clearly more convenient forum, and transfer is warranted for the convenience of the parties and the witnesses and in the interest of justice. Accordingly, the motion to transfer (Doc. 66) and the motion for joinder (Doc. 72) are **GRANTED**, and this action is **TRANSFERRED** to the United States District Court for the Western District of North Carolina for further proceedings. At the May 2nd hearing, the Court took under advisement Plaintiffs' motion to add a party-plaintiff (Doc. 89). This Court finds it appropriate **not** to rule on that motion or any of the other motions that are pending.

**IT IS SO ORDERED.**

DATED: 05/16/05

                                            s/ G. Patrick Murphy
                                            G. PATRICK MURPHY
                                            Chief United States District Judge